## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JOSEPH R. PHILLIPS-BEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-04-1117-M** |
| | ) | |
| **LIEUTENANT TIPP,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing pro se, brings this action pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights.  United States District Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  Defendant has filed a motion to dismiss/motion for summary judgment,[1] to which Plaintiff has responded. Defendant has  filed a reply to that response, and Plaintiff has filed a surreply.  Thus, the matter is at issue and ready for disposition.  For the following reasons, it is recommended that Defendant's motion for summary judgment be granted in part and denied in part.

In his complaint, Plaintiff names one Defendant, Lieutenant Tipp, whom he identifies as a unit security chief at the Lawton Correctional Facility (LCF), a private prison housing inmates under contract with the Oklahoma Department of Corrections. Complaint, p. 1.  In Count I, he alleges cruel and unusual punishment in violation of his Eighth Amendment rights, including an allegation that Defendant Tipp used

---

[1]Although Defendant has moved alternatively for either dismissal under Fed.R.Civ.P. 12(b)(6) or for summary judgment under Fed.R.Civ.P. 56(c), the undersigned has considered matters outside of the pleadings and so will proceed under the standard governing summary judgment motions.

excessive force as a means to inflict pain and verbally assaulted Plaintiff with the intent to inflict mental cruelty. In Count II, Plaintiff alleges that Defendant Tipp violated his Fourteenth Amendment right to equal protection by disregarding institutional and state laws preventing excessive force, and by failing to follow proper procedures before the use of force.  In Count III, Plaintiff alleges that Defendant violated his right to due process under the Eleventh Amendment[2] by using his authority to file a "bogus" misconduct report against Plaintiff in hopes of disguising his attempt to have Plaintiff assaulted and battered by celling him with a known-violent inmate.

## I.  PROCEDURAL POSTURE

Shortly after the complaint was filed herein, the undersigned conducted an initial review as required by 28 U.S.C. § 1915A(a) and  42 U.S.C. § 1997e(c)(1).  As a result of that screening process, it appeared to the undersigned that Plaintiff had failed to adequately allege exhaustion of administrative remedies, which is an essential element of a  § 1983 claim.  Plaintiff was directed to show cause why the action should not be dismissed for his failure to fully exhaust his administrative remedies. [Doc. No. 11].  In Plaintiff's response, he stated that he had exhausted "all administrative remedies known to him." [Doc. No. 12, p. 1]. Plaintiff stated that when he did not receive a response to institutional request(s) to staff which he had filed, he filed an institutional grievance with the warden. He claimed that the warden did not respond, prompting him to file another grievance with the Director of the Oklahoma Department

---

[2]This claim has been construed as arising under the Fourteenth Amendment of the U.S. Constitution, as the Eleventh Amendment appears to have no applicability.

of Corrections, to which he also did not receive a response. However, because Plaintiff failed to state the precise number of requests to staff supposedly filed, the dates that either the requests to staff or grievances were filed, their content, or for that matter, any other detail, the undersigned recommended that the action be dismissed without prejudice for Plaintiff's failure to adequately show exhaustion. [Doc. No. 13].

Plaintiff objected to the Report and Recommendation, [Doc. No. 16], claiming that under Lawton Correctional Facility policy, it is only necessary to file a single request to staff and grievance to exhaust administrative remedies, followed by one attempt to resolve the issue at the Oklahoma Department of Corrections' level.  Id. at 2. Also, for the first time, he provided a statement under penalty of perjury that he filed two requests to staff to his unit manager Clifford Barnard on July 18, 2003, and again on July 21, 2003, regarding the alleged verbal and physical assault against him by the Defendant on those dates.  Id. at Ex. 1, p. 2. He further swore under oath that he "awaited two weeks to receive responses" from the unit manager, but never did, so he filed an institutional grievance to the warden. Id. He further swore that he waited twenty-one days, but never received a response from the warden, so he filed a grievance with DOC Director Ron Ward – also never receiving a response. Id.  Based upon this sworn declaration, Judge Miles-LaGrange found that Plaintiff had adequately alleged exhaustion of administrative remedies, declined to adopt the recommendation, and re-referred the matter to the undersigned for further proceedings. [Doc. No. 17]. Now pending before the Court is the motion for summary judgment of the Defendant.[3]

---

[3]Plaintiff has titled his response a "motion to strike/dismiss" Defendant's motion for summary judgment. The undersigned has construed this as a response, but to the extent Plaintiff intended it to
(continued...)

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party.  Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992); Manders v. Oklahoma, 875 F.2d 263, 264 (10th Cir. 1989).  A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  "Material facts" are "facts that might affect the outcome of the suit under the governing law."  Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Rather, the moving party initially bears the burden only of "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  Id., at 325.  Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact.  Id. at 324.  The  nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement.  Anderson, 477 U.S. at 256. Rather, Fed. R. Civ. P. 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by

---

[3](...continued)
be a stand alone motion, it is denied.  Plaintiff's objections are clearly substantive rather than procedural, and a review of Defendant's motion does not reveal any procedural deficiencies.

the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.

The special report filed herein "is treated like an affidavit," Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991), as is the complaint because Plaintiff has made his factual allegations under penalty of perjury. See Hall, 935 F.2d at 1111.

## III.  UNDISPUTED FACTS

Based upon the special report, the complaint, and the evidentiary material appended to the various motions and responses filed herein, the following material facts are uncontroverted, deemed admitted, or, where disputed, viewed in the light most favorable to Plaintiff.  Immaterial facts and facts not properly supported by the record are omitted.

At all times pertinent to the issues raised herein, Plaintiff was housed at LCF.[4] Defendant Lieutenant John Tipp is employed at LCF as a senior correctional officer. Defendant's Motion, p. 2.  Upon Plaintiff's arrival at LCF on July 15, 2003, he discovered he was to be taken to the prison's protective custody unit.  Complaint, Att. Nature of the Case, p. 1 ¶ 1. After Plaintiff informed personnel in charge that he had come from a general housing population unit at the Oklahoma State Penitentiary, he was placed in "general population segregation" pending further investigation.  Id. at ¶ 4-5.

---

[4]There is some discrepancy in the record as to the actual dates Plaintiff was at LCF. Defendant states that Plaintiff was there until January 16, 2005, whereas Plaintiff states that he was transferred on January 6, 2004. Compare Special Report, p. 1 with Plaintiff's Response, Att. J, p. 2. Although it appears that Plaintiff was transferred in 2004 rather than 2005, as his complaint and other filings in this case show a certificate of service from the Oklahoma State Penitentiary in McAlester, the difference is not material to the issues raised by Plaintiff.

On the morning of July 18, 2003, Defendant came to Plaintiff's cell and told him to gather his things because he was being transported to the "transit detention unit." Id. at p. 2, ¶ 6.  Upon arrival at the unit, Plaintiff discovered that the "pod" was instead one of the protective custody unit pods. Complaint, Att. Nature of the Case, p. 2, ¶ 7. Plaintiff was escorted into one of the cells, cell H4-A-106, by several correctional officers. Id. at ¶ 7, 9; see also Plaintiff's Response, Ex. F, ¶ 2-3 (Affidavit of Gary Grass). Plaintiff asked Defendant "why did he lie" to him, and Defendant "became extremely angry," "pushing and shoving" Plaintiff with his hands. Complaint, Att. Nature of the Case, p. 2 ¶ 7; Plaintiff's Response, Ex. F, ¶ 2-3.  Plaintiff asked Defendant to stop striking him in "a loud enough voice so the other inmates would know that the Defendant was being violent," and Defendant told Plaintiff to "shut his mouth" and "then he shoved the Plaintiff, face, hard against the cell wall." Complaint, Att. Nature of the Case, p. 2 ¶ 8; Plaintiff's Response, Ex. F, ¶ 4.  Defendant then roughly removed Plaintiff's handcuffs and left the cell.  Complaint, Att. Nature of the Case, p. 2 ¶ 9. Plaintiff asked another correctional officer, Officer Jackson, if it would be possible for the medical staff to be notified of the injuries he sustained from Defendant's assault, and Defendant slammed the door and told the officer that Plaintiff was to see no one. Id.

Another inmate, Gary Grass, provided an affidavit stating that he saw Defendant and other correctional officers escorting Plaintiff into cell #A106 on July 18, 2003, and that Plaintiff was in handcuffs and shackles. Plaintiff's Response, Ex. F, ¶ 2-3.  He states that after a while he saw Defendant Tipp stick his hands and fingers in Plaintiff's face, and then push Plaintiff with his hands, while appearing to be talking to him.  Id.

at ¶ 3.  He then observed Defendant grab Plaintiff's neck and head and appear to try to "push [Plaintiff's] head through the cell wall."  Id. at ¶ 4.  He then saw Defendant and the other officers remove Plaintiff's handcuffs and leg shackles and leave the cell.  Id. at ¶ 5.

Plaintiff became fearful of Defendant and "stopped eating all food items," for fear that Defendant would try to "use his food to cause harm to him."  Complaint, Att. Nature of the Case, p. 3 ¶ 10.  On July 21, 2003, Plaintiff was taken to the facility medical clinic.  Id. Defendant and another correctional officer strip searched Plaintiff and escorted him to the "medical room."  Id. at ¶ 11. They were met there by facility nurse Ms. Booker who advised that Plaintiff needed to be taken to the facility medical clinic.  Id.

On the way to the clinic, Ms. Booker asked Plaintiff several times why he had not been eating, and he told her that he was very much afraid of the Defendant.  Id. at ¶ 12.  He told her that the Defendant had threatened him and he feared that he would do something, or have someone else do something, to his food.  Id.  Defendant told Plaintiff to "shut [his] mouth and not to say another word."  Id. at ¶ 13.  Ms. Booker kept asking Plaintiff a lot of questions, so Plaintiff once again began to answer. Id. at p. 3-4, ¶ 13. Defendant began to shout at him to "shut his f------ mouth" and to tell him he was "a big sissy." Id. p. 4, ¶ 13. Plaintiff ignored him and continued to answer Ms. Booker's questions.  Id.  Defendant then jumped in front of Plaintiff and began to stick his hand and finger in Plaintiff's face.  Id.  Plaintiff told Defendant to remove his hand and finger from his face, and Defendant told Plaintiff to "try making him remove them."

Id. at ¶ 14.  Plaintiff told Defendant that he would not do anything as long as Defendant was not touching him.  Id.

Defendant once more became verbally abusive, telling Plaintiff he would touch him if he wanted.  Id. at p. 4, ¶ 15.  Plaintiff asked Ms. Booker if she could get Defendant to continue their progress to medical, at which point Defendant screamed that no one "could tell him to do shit and for [Plaintiff] to shut the heil [sic] up."  Id. As they continued on, Defendant continued to verbally assault Plaintiff.  Id.

Defendant stopped and asked Plaintiff what "did he mean he had better not hit him."  Complaint, Att. Nature of the Case, p. 5, ¶ 16.  Defendant began assaulting Plaintiff with his hand and finger, and when Plaintiff asked him to stop, he said to "make him stop."  Id.  Plaintiff asked Ms. Booker if she was witnessing the actions of Defendant, and Defendant began screaming for Plaintiff to "get against the fence and spread them."  Id. at ¶ 17.  Plaintiff asked why he was being pat searched again, and Defendant responded that it was because he wanted to, and he began to "chop" at Plaintiff's body in an "assaultive" manner.  Id. Defendant then said now that "he was hitting" him, what was he "going to do about it." Id. at ¶ 18.

Defendant then asked Ms. Booker to step inside.  Id. at ¶ 19.  Plaintiff asked her not to because he was afraid Defendant would physically attack him without her present.  Id.  Defendant shoved Plaintiff against a fence, made him place his hands behind his back, and handcuffed them.  Id. Ms. Booker then went inside.  Id. at p. 5-6, ¶ 19.  Once Ms. Booker left, Defendant and the other correctional officer began hitting Plaintiff "in the head with the flat part of their hands" and calling him a "P.C. Rat," "Snitch," and a "F------ Catch-Out." Id. at p. 6, ¶ 20; Plaintiff's Response, Ex. G, p. 2

8

(Affidavit of Frank Jones).  Defendant told Plaintiff that someone needed to kill him, and if he had his way "it would soon be done."  <u>Id.</u>

Plaintiff has provided the affidavit of inmate Frank Jones, who states that he saw Defendant and another correctional officer come to take Plaintiff to medical on July 21, 2003, because Plaintiff had been on a "hungry strike."  Plaintiff's Response, Ex. G.  He claimed to be watching through the window for the trio because Defendant's "attitude suggested he was in a violent mood."  <u>Id.</u>  After about fifteen minutes, Mr. Jones saw them  and a nurse making their way to medical.  <u>Id.</u> He saw the group stop and then start again, and it appeared that Defendant "was in [Plaintiff's] face speaking in a hostile manner."  <u>Id.</u>  He then saw the nurse disappear into the building, and saw Defendant and the other correctional officer hit Plaintiff several times in the head area before taking him through the door.  <u>Id.</u>

Plaintiff was then taken to a medical observation room, where Defendant began throwing things around the room in a violent manner.  Complaint, Att. Nature of the Case, p. 6, ¶ 21.  Plaintiff asked if he could speak with medical personnel, and Defendant told him that no one would help him and he "was just like every other nigger."  <u>Id.</u>  Immediately after Defendant left, medical personnel came to speak with Plaintiff and he was so "physical and mental disturbed, that he had a nervous breakdown," and was unable to eat for two weeks because of the depression caused by the physical and mental treatment by Defendant.  <u>Id.</u> at ¶ 22.

On November 4, 2003, Defendant approached Plaintiff's cell with a "violent disturbed" inmate named Jerome Jefferson who was being escorted by several C.E.R.T. team officers.  Complaint, Att. Nature of the Case, p. 7, ¶ 24.  Jefferson was making loud

statements that if he were put in a cell with someone, he was going to "smash" them. Id. Defendant said "good, because I'm putting you in the cell with [Plaintiff]." Id. C.E.R.T. team members were "wrestling" with this inmate to maintain control, and the inmate had his "legs shackled in restrain[t]s and his arms handcuffed behind his back, with a doggy chain attached." Id. at ¶ 25. Plaintiff asked Defendant why he was being forced to cell with this inmate, and placed in this "dangerous situation" since single cells were available, and Defendant replied that he did not like him and hoped the inmate would "do him a favor." Id. p. 7-8 ¶ 26, 28. Plaintiff asked to speak to someone from "psyche" services, and Defendant told Plaintiff if he was going to kill himself, to go ahead because he "wanted to watch." Id. at ¶ 28, 29. Defendant told the pod officer to never let the violent inmate out of the cell unless he was leg shackled and handcuffed, and that he was to shower and recreate by himself. Complaint, Att. Nature of the Case, p. 8, ¶ 30. Defendant and the C.E.R.T. team then "wrestled" the inmate into Plaintiff's cell, and "left laughing making bets who would win out," Plaintiff or the inmate. Id. Defendant then filed a misconduct report against Plaintiff in an attempt to cover up his actions to have Plaintiff physically harmed by the inmate, Id. at ¶ 31. In that misconduct report,[5] Defendant accused Plaintiff of threatening to hurt himself in order to "get a cell move." Plaintiff's Response, Ex. E, p. 1. The misconduct reflects that the immediate action taken was that Plaintiff was placed on "level I suicide watch in medical." Id. Attached to the misconduct is a statement from Dr. Strickland, stating

---

[5]In the special report, Sergeant David R. Clark submitted an affidavit claiming that he had reviewed the misconduct records currently maintained at LCF, and found no record of misconducts against Plaintiff. Special Report, Ex. 1. Plaintiff, however, produced a copy of a misconduct report written by Defendant on November 4, 2003. Plaintiff's Response, Ex. E.

that Plaintiff was suffering from depression and bereavement due to the death of his son, and that because the loss was at the hands of gang members, Plaintiff had stated that if housed with gang members, he might want to harm them.   Id. p. 2.

## IV.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

As his first ground for summary judgment, Defendant contends that Plaintiff has failed to exhaust his administrative remedies. In his reply to Plaintiff's response, Defendant also states that until receiving Plaintiff's response to his motion for summary judgment, he was unaware of the previous Report and Recommendation regarding the issue of exhaustion, Plaintiff's objection to that recommendation, or Judge Miles-LaGrange's order.  However, Defendant maintains that the order of Judge Miles-LaGrange only declined to adopt the previous Report and Recommendation on grounds that Plaintiff had "adequately *alleged* total exhaustion of administrative remedies," and that the only *evidence* Plaintiff has provided in support of that allegation is his own "unsupported and loosely worded affidavit." Defendant's Reply, p. 2-3.  He cites the affidavit of Lieutenant Chad Manuel, grievance officer at LCF, which states that there are no records of any grievances submitted by Plaintiff regarding complaints that he had been assaulted by Defendant. Defendant's Reply, Ex. 2.[6] Defendant also relies upon the affidavit of Deborah Romine, administrative

---

[6]The undersigned notes that Lt. Manuel also provided an affidavit with the special report submitted herein, in which he made a more general statement that he had "reviewed the grievance records currently maintained at Lawton Correctional Facility and ... found no records of any grievances submitted by Joseph R. Phillips, DOC #97832 to this facility or to the Oklahoma Department of Corrections.  Special Report, Ex. 3, ¶ 4.

programs officer at the DOC, which states that there are no records of any grievance appeal from Plaintiff. Special Report, Ex. 4.

Although Defendant is correct as to the limited scope of Judge Miles-LaGrange's finding in the screening stage of this litigation, the undersigned finds that Plaintiff's sworn affidavit containing specific information regarding his alleged efforts to exhaust his claims is enough of a showing to defeat Defendant's motion for summary judgment on the issue of exhaustion. Defendant has provided affidavits from both Lt. Manuel and Ms. Romine stating that they have no records of any grievances or grievance appeals filed by Plaintiff, <u>see</u> Special Report, Exs. 3 and 4, but Plaintiff swears that he did indeed file them. This is a classic fact issue unsuitable for resolution at this particular stage of the litigation. <u>Baughman v. Harless</u>, No. 04- 6256, 2005 WL 1806442 (10th Cir. Aug. 2, 2005).[7]   Accordingly, the undersigned will proceed to consider the other grounds raised in Defendant's motion.

### B.  COUNT I – EIGHTH AMENDMENT

As his next ground for summary judgment, Defendant contends that Plaintiff was not the subject of an Eighth Amendment violation. Defendant characterizes Plaintiff's Eighth Amendment claim as actually containing three separate and distinct claims: that Defendant verbally and physically assaulted Plaintiff, denied him the right to seek medical and psychological treatment for unspecified ailments, and caused him to believe that Defendant tampered with his food. Defendant's Motion, p. 2, 8.  As will be explained below, Plaintiff's excessive force claim is governed by a different standard

---

[7]This and any other unpublished disposition are cited herein for persuasive authority pursuant to Tenth Circuit Rule 36.3.

than the other two Eighth Amendment claims identified by Defendant, and so it will be addressed separately.

The Eighth Amendment imposes duties on prison officials, who "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). See Ramos v. Lamm, 639 F.2d 559, 568 (10th Cir. 1980) (states must provide their inmates with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, and plumbing)"). The Eighth Amendment requires prison officials to "provide humane conditions of confinement," which includes taking "reasonable measures to guarantee the safety of the inmates." An inmate who claims that prison officials have violated the Eighth Amendment by failing to provide humane conditions must first demonstrate that the deprivation was "objectively, 'sufficiently serious,'" as only those deprivations denying the "minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). If this "objective" element is established, the inmate must then establish what has become known as the "subjective" element – that prison officials had a "'sufficiently culpable state of mind'" in allowing the deprivation to take place, i.e., that the prison officials acted with deliberate indifference to the inmate's health or safety. Id. (quoting Wilson, 501 U.S. at 297). See also Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 809 (10th Cir. 1999) (recognizing deliberate indifference as the proper standard for subjective

component of Eighth Amendment claims based on conditions of confinement). "[D]eliberate indifference' is a stringent standard of fault," <u>Board of County Com'rs v. Brown</u>, 520 U.S. 397, 410 (1997), which cannot be satisfied by a mere showing of ordinary lack of due care. <u>Farmer</u>, 511 U.S. at 835-36. For a delay in medical treatment to be actionable as an Eighth Amendment violation, the delay "must, in itself, reflect 'deliberate indifference which results in substantial harm.'" <u>Fleming v. Uphoff</u>, No. 99-8035, 2000 WL 374295, at *3 (10th Cir. Apr. 12, 2000) (quoting <u>Olson v. Stotts</u>, 9 F.3d 1475, 1477 (10th Cir. 1993)).

The undersigned finds that with regard to the alleged denial of medical/ psychological treatment and fear of food tampering, Plaintiff has failed to come forward with evidence showing an "objectively, 'sufficiently serious,'" deprivation denying the "minimal civilized measure of life's necessities," which was "sufficiently grave" to form the basis of an Eighth Amendment violation. Plaintiff alleges that he asked Correctional Officer Jackson to notify medical staff of his injuries on July 18, and that Defendant told Officer Jackson that Plaintiff "wasn't to see anyone." However, Plaintiff has failed to come forward with any evidence showing the injuries he allegedly sustained, how much delay – if any – there was in the receipt of medical care for those injuries, and whether he suffered any substantial harm as a result of any such delay. Complaint, Att. Nature of Case, p. 2-3.  With regard to the food tampering claim, Plaintiff alleges that he "stopped eating all food items, for fear the Defendant would try to use his food to cause harm to him," but has come forward with no proof substantiating this particular fear, that Defendant had any direct involvement in the preparation or delivery of his food, or that he did anything to deprive Plaintiff of an adequate amount of nutritious

14

food. Id. at 3. In fact, the evidence offered by Plaintiff in response to Defendant's motion for summary judgment characterizes Plaintiff's failure to eat as a "hunger strike." Plaintiff's Response, Ex. G, I.  Accordingly, it is recommended that Defendant's motion for summary judgment as to Plaintiff's Eighth Amendment claims regarding Defendant's failure to provide medical/psychological care and food tampering be granted.[8]

Before turning to Plaintiff's excessive force claims, the undersigned notes that in addressing all of Plaintiff's Eighth Amendment claims, Defendant has relied on the general standard established in Wilson v. Seiter, 501 U.S. 294, 298 (1991) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981). However, to establish an Eighth Amendment claim for excessive force, a plaintiff must prove that "force was applied ... maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986); see also Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline ...." Hudson, 503 U.S. at 7; see also Mitchell v. Maynard, 80 F.3d 1433, 1440 (10th Cir. 1996). Hudson and Whitley outline five distinct factors relevant to ascertaining whether force was used "maliciously and sadistically for the very purpose of causing harm": (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety

---

[8]The undersigned notes that Plaintiff's claim that Defendant intentionally celled him with a violent inmate would fall within the same category as these non-excessive force Eighth Amendment claims. See Farmer, 511 U.S. at  832 (prison officials must take reasonable measures to guarantee the safety of inmates). However, Defendant has failed to move for summary judgment as to that incident, and so the undersigned will not address it.

of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. Whitley, 475 U.S. at 321; see also Hudson, 503 U.S. at 7.

The Court in Whitley also set forth the applicable inquiry when deciding whether officials such as Defendant are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a *reliable inference* of *wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322 (emphasis added). The undersigned finds that under this standard, Defendant's motion for summary judgment on Plaintiff's claims of excessive force should be denied.

First, it is Defendant's position that the incidents referred to by Plaintiff simply did not occur, so he has obviously provided no evidence going to the reasonableness of the force allegedly applied on those occasions.  Defendant's Motion, p. 10. Instead, Defendant states that "assuming *arguendo* the Defendant had acted inappropriately, Plaintiff has failed to show that Defendant's actions rose to the level of a constitutional violation or that he deliberately took action with the intent to cause the Plaintiff harm."

Id.  It is unclear to the undersigned what Defendant is asking the Court to assume when he asks it to assume that he acted "inappropriately." The Court's job is made even more difficult by Defendant's failure to address Plaintiff's excessive force claim by reference to the correct legal standard. Therefore, in applying the appropriate legal standard, the undersigned has assumed that Defendant is asking the Court to assume the incidents themselves happened.

Turning to the first incident, that which occurred on July 18, 2003, the undersigned finds that Plaintiff has come forward with enough evidence to support a reliable inference that Defendant pushed or shoved Plaintiff's face or head into the cell wall with wantonness and for the very purpose of causing pain. First, the evidence offered by Plaintiff indicates that he did suffer some type of injury as a result of the July 18 incident, as he asked Correctional Officer Jackson to notify the medical department of the injuries he sustained as a result of the incident. Although it is true that there is no detail as to the nature or severity of any injury, that is but one of the factors to be considered under the <u>Whitley</u> analysis. Moreover, significant physical injury is not required as the constitutional inquiry focuses on whether there was infliction of pain that was unnecessary and wanton. <u>See</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992) ( "The absence of serious injury is ... relevant to the Eighth Amendment inquiry, but does not end it."); <u>Northington v. Jackson</u>, 973 F.2d 1518, 1523 (10th Cir.1992) (same); <u>Sasa v. Zavaras</u>, No. 98-1210, 1998 WL 849764, at **4 (10th Cir. Dec. 9, 1998) (although evidence as to injury is admittedly scarce – inmate alleged only that he was injured – allegations concerning the extent of force used, if true, necessarily would have involved the wanton infliction of pain and would be sufficient to constitute an Eighth Amendment violation).  However, the absence of serious injury is relevant to the inquiry concerning force, <u>Hudson</u>, 503 U.S. at 7, because the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition de minimis uses of physical force not otherwise "repugnant to the conscience of mankind." <u>Hudson</u>, 503 U.S. at 10.  Here, there is no evidence as to the seriousness of the injury, but there is evidence that Plaintiff's request that the

medical department be notified was denied. Thus, it can be inferred that the lack of evidence as to the seriousness of the injury was caused by Defendant's refusal to allow the medical department to be notified. Moreover, running an inmate's head into a wall can involve more than a de minimis use of physical force. See Sasa v. Zavaras, No. 98-1210, 1998 WL 849764, at **4 (10th Cir. Dec. 9, 1998) (allegation that officer used fists, choked and beat inmate about the head, and ran inmate's head into a wall involved more than de minimis use of physical force).

The remaining Whitley factors support Plaintiff's allegation that there was no need for Defendant to push or shove his face into the cell wall on July 18. The undersigned recognizes that it is Defendant's position that the July 18 incident never occurred, but that leaves the Court with only the evidentiary showing made by Plaintiff – that there was no need for Defendant's application of force.  If that fact is uncontroverted, inquiry into the remaining Whitley elements – relationship between the need for force and the amount of force used, efforts made to temper the severity of the forceful response, and the extent of threat to the safety of staff and other inmates – becomes a meaningless exercise. Although Plaintiff did state that he asked Defendant why he had "lied" about where he was moving him, there is nothing in the record indicating that Plaintiff failed to cooperate with Defendant and/or the correctional officers assisting him.  If there is no penological reason for the force employed – and the only evidence submitted at this point is that there was not – Defendant's action in pushing or shoving Plaintiff's face into the cell wall is evidence of excessive force sufficient to defeat Defendant's motion for summary judgment. DeSpain v. Uphoff, 264 F.3d 965, 978-979 (10th Cir. 2001).  Although Plaintiff's excessive force claim might

be weak, it is not the Court's mission at this point to weigh the evidence, but simply to determine if an issue exists for the jury to determine. Griffin v. Crippen, 193 F.3d 89, 91 (2nd Cir.1999) ("Although appellant's excessive force claim is weak and his evidence extremely thin, dismissal of the excessive force claim was inappropriate because there are genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him.") cited with approval, Lowe v. Sockey, No. 00-7109, 36 Fed. Appx. 353, 359 (10th Cir. Apr. 2, 2002); see also Allen v. Muskogee, 119 F.3d 837, 840-842 (10th Cir.1997) (court will not approve summary judgment in excessive force cases if moving party has not quieted all disputed issues of material fact).  Here, the evidence viewed in the light most favorable to the Plaintiff supports an inference of wantonness in the infliction of pain in that it shows that Defendant pushed or shoved Plaintiff's face into a cell wall for no penological reason, causing injury.

The incident of July 21, 2003, is on slightly different footing, but still presents fact questions precluding summary judgment for Defendant.  First, it is plain from Plaintiff's own evidence that he was not being cooperative during the walk to the medical department. Although Plaintiff claims merely to have been answering questions put to him by Ms. Booker, he also admits that Defendant told him to "shut [his] mouth and not to say another word" – a command that Plaintiff obviously disobeyed.  In fact, Plaintiff's description of the episode can fairly be described as an argument with Defendant.  Second, during this verbal exchange, Plaintiff was not secured in restraints or in his cell pod, but was traveling from a secured area of the prison to the medical department, accompanied by the facility nurse. This made his

19

failure to cooperate, even verbally, with Defendant of concern. However, by the time the force at issue was applied – the hitting of Plaintiff on the head with an open hand – Plaintiff had already been handcuffed with his hands behind his back. Thus, there is no evidence showing the need for force – much less the need for the amount of force used. There is no evidence that the Defendant made any effort to temper the severity of the force applied – indeed, his handcuffing of Plaintiff would seem to have negated any need to strike Plaintiff about the head before taking him inside to the medical department. Finally, Ms. Booker had already gone inside as directed, removing any threat to the safety of staff.  Although the undersigned recognizes that not "every malevolent touch by a prison guard gives rise to a federal cause of action" and that not "every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights," Hudson v. McMillian, 503 U.S. 1, 9 (1992), the repeated striking of the then-handcuffed Plaintiff by two correctional officers at the least supports a reliable inference that the force was applied for the purpose of inflicting pain rather than for a penological reason.  Furthermore, although the Eighth Amendment's prohibition "necessarily excludes from constitutional recognition de minimis uses of physical force,"a review of the cases in which the force applied was found to be de minimis reveals that the force was being applied for *some reason*. Fowler v. Hodge, No. 03-7008, 94 Fed. Appx. 710, 713 (10th Cir. Mar. 30, 2004) (force de minimis when escorting officer grabbed inmate's arm to change direction, twisting his back and causing him pain); Bridgeforth v. Ramsey, No. 99-6179, 1999 WL 992978, at **2 (10th Cir.  Nov. 2, 1999) (inmate's allegations that defendants were rough when putting him in restrictive housing, coupled with verbal harassment, are

insufficient to state a claim under the Eighth Amendment because de minimis); Sims v. Hickok, No. 99-1110, 1999 WL 448824, at **1 (10th Cir. July 2, 1999) (force de minimis although correctional officers kicked, pushed, nudged, and shook inmate during the seizure); Ross v. Sandberg, No. 97-1200, 1997 WL 755150, at **2 (10th Cir. Dec. 4, 1997) (touching inmate in back with a baluster may be a simple battery, but it does not give rise to a constitutional claim because force was de minimis); Thompson v. Hamilton, No. 97-6084, 1997 WL 639320, at **1 (10th Cir. Oct. 14, 1997) (although inmate's arm was grabbed and twisted and he was choked, force was applied briefly when he was being removed from cell and there was no evidence of any injury, let alone minor injury, so force in question was de minimis); Nelson v. Jaramillo  No. 96-2001, 1996 WL 731647, at **1 (10th Cir. Dec. 20, 1996) (although guard, during the course of a routine pat down search and for no reason, struck plaintiff in the back with "relatively light force," plaintiff failed to establish more than a de minimis use of force). Plaintiff's sworn complaint states that as Defendant struck him he verbally assaulted him and stated that someone "need[ed] to kill him and if he had his way, it would soon be done." Complaint, Att. Nature of the Case, p. 6 ¶ 20. In his complaint, Plaintiff also states that "[i]mmediately after Defendant left, the medical personnel came to speak with [him]," and that he was so "physical[ly] and mental[ly] disturbed that he had a nervous breakdown [and]  was unable to eat for two weeks because of the depression caused by the physical and mental treatment of Defendant." Id. at ¶ 22. The undersigned finds that this evidence, when taken in the light most favorable to Plaintiff, supports a reliable inference of wantonness in the infliction of pain, and it is

recommended that Defendant's motion for summary judgment on Plaintiff's Eighth Amendment excessive force claims be denied.

In summary, Defendant is entitled to summary judgment with regard to Plaintiff's Eighth Amendment claims that Defendant denied him medical/psychological care and caused him to believe his food had been tampered with by Defendant or others at his behest. However, Defendant is not entitled to summary judgment with regard to Plaintiff's Eighth Amendment excessive force claims stemming from the incidents on July 18, 2003 and July 21, 2003.  Finally, Defendant did not move for summary judgment with regard to Plaintiff's Eighth Amendment claim that in November of 2003, Defendant showed deliberate indifference to his safety by placing him in the same cell with inmate Jerome Jefferson.

### C.  COUNT II – DENIAL OF EQUAL PROTECTION

In Count II of the complaint, Plaintiff claims that Defendant disregarded institutional and state law policies preventing excessive force, and that he did not use the proper avenues "because he had no concerns for Plaintiff's rights or due process." Complaint, p. 3.  Defendant claims that he is entitled to summary judgment on this claim because Plaintiff has failed to show that he was discriminated against based upon his membership in a protected class or contrary to other inmates who were similarly situated.  The undersigned agrees with Defendant that Plaintiff has come forward with no evidence showing a violation of the equal protection clause of the Fourteenth Amendment.

The Equal Protection Clause "requires the government to treat similarly situated people alike." Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998) (citing City

of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  Thus, to assert a viable equal protection claim, a plaintiff must first make a threshold showing that he was treated differently from others who were similarly-situated to him.  Id.  Plaintiff has not made this showing.  "Unless a legislative classification either burdens a fundamental right or targets a suspect class, it need only bear a rational relation to some legitimate end to satisfy the Equal Protection Clause."  Kinnell v. Graves, 265 F.3d 1125, 1128 (10th Cir. 2001) (internal quotations omitted).  Plaintiff does not allege either a violation of a fundamental right or treatment stemming from his membership in a suspect class, and he has not submitted any evidence to suggest that other groups of inmates received different or better treatment than he did.  Indeed, the Tenth Circuit has noted that an equal protection analysis in a prison setting "requires consideration of a number of factors, including the size of the prison populations in the facilities to be compared, the average length of sentences the inmates are serving, the inmates' security classifications, the types of crimes for which the inmates have been incarcerated, and any special characteristics."  Marsh v. Newton  No. 97-2157, 1998 WL 39235, at *3 (10th Cir. Jan. 30, 1998).  Moreover, Plaintiff's claim that Defendant failed to follow LCF procedures does not in and of itself show a constitutional violation.  Prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates."  Sandin v. Conner, 515 U.S. 472, 481-82 (1995).  The same is true of violations of state law.  See, e.g., Jones v. City and County of Denver, 854 F.2d 1206, 1209 (10th Cir. 1988) (a violation of state law, by itself, does not rise to the level of a federal constitutional deprivation and thus is not cognizable under § 1983).  In light of Plaintiff's failure to come forward with any

evidence showing an equal protection violation, Defendant is entitled to summary judgment on Count II. Cosco v. Uphoff, 195 F.3d 1221, 1222 n.2 (10th Cir. 1999).

### D. COUNT III – DENIAL OF DUE PROCESS

Finally, in Count III, Plaintiff alleges a violation of his rights of due process under the Eleventh Amendment to the U.S. Constitution. Liberally construing Plaintiff's complaint, the undersigned has assumed that Plaintiff intends to invoke the due process clause of the Fourteenth Amendment. Plaintiff claims that his right to due process was violated when Defendant wrote a "bogus" misconduct report in an effort to cover up the alleged incident regarding the celling of inmate Jerome Jefferson with Plaintiff. Complaint, p. 3. Defendant moves for summary judgment, alleging that Plaintiff cannot show a due process violation because he has not shown that he was subjected to an atypical or significant hardship that would implicate a liberty interest as required by Sandin v. Conner, 515 U.S. 472, 487 (1995).

Fabrication of a charge against a prisoner does not in and of itself create a constitutional violation. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (claim based on the falsity of the charges standing alone does not state a constitutional claim); Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); Riley v. Church, Nos. 95-1192, 95-1193, 1996 WL 145846, at *2 (6th Cir. Mar. 29, 1996) ("A prisoner has no constitutional right to be free from false accusations of misconduct." (citation omitted)). Consequently, an allegation that the misconduct charge is false does not state a valid claim unless Plaintiff has been deprived of a protected property

or liberty interest.  Plaintiff has come forward with a copy of the misconduct report in question, along with a statement taken by an investigation officer from a Dr. Strickland in connection with the misconduct.  <u>See</u> Plaintiff's Response, Ex. E. However, he has failed to show that he suffered any punishment at all as a result of the misconduct report. Pursuant to <u>Sandin</u>, 515 U.S. at 484 , a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that imposes an "atypical and significant hardship  . . . in relation to the ordinary incidents of prison life." Plaintiff's failure to show that he suffered any punishment as a result of the misconduct report, much less punishment constituting an "atypical and significant hardship" as required by <u>Sandin</u>, entitles Defendant to summary judgment on Count III.

## <u>RECOMMENDATION</u>

For the reasons set forth above, it is recommended that Defendant's motion for summary judgment [Doc. No. 24] be granted in part and denied in part as more specifically set forth above. Furthermore, to the extent Plaintiff's response to Defendant's motion for summary judgment was meant by him to also be a motion to strike Defendant's motion [Doc. No. 25], it is denied. The parties are advised of their right to file an objection to this Report and  Recommendation with the Clerk of this Court by August 30, 2005, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal questions contained herein. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 10th day of August, 2005.**


DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE